IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

JUL 06 2023

LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:19-CR-00045 |
| v. | ) |
| | ) |
| ARTHUR LEE SMITH, | ) |
| | ) By: Michael F. Urbanski |
| Defendant | ) Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Arthur Lee Smith's pro se motion for early termination of supervised release, ECF No. 68. For the reasons stated below, the court **DENIES** Smith's motion.

On April 18, 2019, Smith was indicted on four counts related to distribution of heroin and one count of being a felon in possession of a firearm. Indictment, ECF No. 17. On July 11, 2019, pursuant to a written plea agreement, Smith pled guilty to one count of possessing with intent to distribute heroin, and one count of possessing ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year. Plea Agreement, ECF No. 40 at 1–2. On October 28, 2019, Smith was sentenced to a term of 30 months' incarceration to be followed by a 3-year term of supervised release. J., ECF No. 52. Smith was released from incarceration on May 6, 2021, to begin serving his term of supervision.[1] He has served more than two years of his term.

---

[1] See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Arthur Lee Smith") (last viewed June 26, 2023).

1

Smith filed his pro se motion for early termination of supervised release on April 27, 2023. That same day, the court sought input from the United States Probation Officers who have supervised Smith. The officers reported that Smith had encounters with law enforcement that he did not report to his first probation officer, most of which were related to complaints by Smith's wife accusing him of domestic violence. He also has had multiple positive drug screens, including two drug screens that were positive for marijuana in 2022, and one in May 2023, after he filed his motion for early termination of supervised release. No criminal charges have been filed against him and he has paid his monetary fines in full.

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a period of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (4) any pertinent policy statement issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities among defendants; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Turning to the § 3553(a) factors and looking at the nature and circumstances of the offense, Smith was recorded making sales of heroin to individuals in December 2018 and January 2019. Law enforcement officers obtained a warrant to search Smith's residence and discovered more than $2,000 in cash, a Ruger pistol, 62 rounds of .44 caliber ammunition, and a bag containing 0.4 grams of heroin. The residence also had a multi-camera security system that was operable from the primary bedroom, where the currency was found, along with Smith's wallet and identification. Presentence Investigation Report (PSR), ECF No. 49 ¶¶ 6–

3

8. After waiving his Miranda rights,[2] Smith acknowledged that he intended to sell the heroin for a third party, and also acknowledged that he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year and that he was prohibited from possessing firearms and ammunition. Id. ¶ 9.

The fact that a firearm was located at Smith's residence, along with cash and drugs he intended to sell, is troubling. Smith advised that a family member left the gun at his home and had agreed to return to retrieve it. Smith said he knew the gun was in his basement, but he was not exactly sure where it was. Id. ¶ 15. Regarding the ammunition, Smith reported that he had obtained it from someone else and brought it home, where it was found by law enforcement officers. The combination of drugs, cash, and firearms often creates the potential for violence, leading the court to conclude that the nature and circumstances of the offense weigh against early termination of supervised release.

Regarding Smith's history and characteristics, he reported that he had been addicted to heroin and opiates for two years prior to his arrest and began selling drugs to support his own drug habit. Id. ¶ 15. As a 17-year-old, he was convicted of use of a firearm in the commission of a robbery for his participation in the armed robbery of a video store. Id. ¶ 30. He also had convictions for possession of an unlawful chemical compound received while incarcerated, driving on a suspended license, petit larceny, and driving while intoxicated. Id. ¶¶ 31–36. Smith points out that since being on supervised release he has paid his fines, has a good job, and has not incurred any additional charges. The court credits Smith's achievements, but nevertheless finds that Smith's prior offenses, coupled with the positive drugs tests and calls to law

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

4

enforcement accusing him of domestic violence since he has been on supervision, weigh against early termination of supervised release.

Looking at the need for the sentence to provide deterrence to criminal conduct and protect the public, having Smith remain on supervised release will provide benefits to both Smith and the public. Smith is 39 years old and statistically, his risk of recidivism has not dropped significantly. See United States v. Howard, 773 F.3d 519, 533 (4th Cir. 2014) (citing one study showing that three years after release from prison, 60.3 percent of inmates 40 or older had been arrested for a new offense and citing a second study showing that three years after release, 80 percent of prisoners between the ages of 18 and 45 were rearrested, compared to 45.3 percent of those age 45 or older). To be sure, it is encouraging that Smith has maintained employment and has not incurred any new charges, and the court is optimistic that Smith is making a turnaround that will result in his being a productive and law-abiding member of society. But the court remains concerned about Smith's positive drug screens and encounters with law enforcement. Having Smith remain on supervision until the end of his term in 2024 assures that he will be held accountable for his conduct and increases the chances that he will enjoy long-term success when his supervision ends.

In considering the kinds of sentence and the sentencing range established for Smith's offense, the guidelines provide for a minimum supervision term of 3 years on the drug offense and 1 to 3 years on the firearm offense. Id. ¶ 81. Therefore, it is reasonable for Smith to continue serving his 3-year term of supervised release. None of the remaining § 3553(a) factors weigh either in favor or against early termination of supervised release.

Having considered the § 3553(a) factors, the court **DENIES** Smith's motion for early termination. Continuing Smith's period of supervised release provides him with an additional period of accountability, protects the community, and increases his chances for long-term success.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: July 6, 2023

_____
Michael F. Urbanski
Chief United States District Judge